UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

RANDY PRICE, §
§
*Plaintiff*, §
§
v. § Civil Action No. SA-15-CV-369-XR
§
DEARBORN NATIONAL LIFE §
INSURANCE COMPANY, §
§
*Defendant*, §

# ORDER

On this date, the Court considered Defendant Dearborn National Life Insurance Company's Motion for Summary Judgment (Docket no. 20), and the corresponding responses and replies. After careful consideration, the Court will GRANT Defendant's motion.

# BACKGROUND

The case arises from an insurance coverage dispute between Plaintiff Randy Price and Defendant Dearborn National over Price's Term Accidental Death and Dismemberment policy.

## I.   Price's Underlying Injury

Price alleges that on June 8, 2013, he stepped on a nail in his kitchen.[1] Docket no. 20-1 at 15. Price observed that the nail pierced his flip-flop, but not his skin, leaving only an indentation and no open wound or cut. *Id*. at 38. Later, however, Price developed a blood blister where the nail contacted his foot. *Id*. at 41–42.

Prior to stepping on the nail, Price's home had been undergoing construction. *Id*. at 75.

---

[1] Price's complaint alleges that he stepped on "an object in his backyard while barefoot." Docket no. 14 at 2. Both Price and Dearborn, however, seem to agree that the sharp object was allegedly a nail, and that this incident allegedly occurred in Price's kitchen. *See* Docket nos. 20 at 2, 23 at 1.

1

The construction, which had been ongoing for about a month, usually involved somewhere between two and four workers in Price's home on any given day. *Id*. at 75–76. The construction included the addition of a new bathroom and bedroom, along with work in Price's kitchen. *Id*. at 76.

By June 13, Price's blood blister was discolored and swollen, so Price sought medical treatment with Dr. Celeste Borchers. *Id*. at 52. The parties dispute whether this blood blister, for which Price was seeking treatment, was caused by the nail incident on June 8, or was a condition that Price had been dealing with for weeks. Docket nos. 20 at 3, 23 at 1–2. In any event, Dr. Borchers immediately noticed that the wound looked serious and infected, and admitted Price to the hospital. Docket no. 20-1 at 53; Docket no. 20-2 at 15–16. Dr. Borchers performed a number of increasingly serious procedures to control the infection, beginning with draining the wound and leading through a series of increasingly serious amputations of parts of Price's foot. Docket no. 20-2 at 18–23. Ultimately, these smaller procedures proved unsuccessful in combatting Price's infection, and his leg was amputated below the knee. *Id*. at 24. This amputation was the basis for Price's insurance claim, and the denial of this claim is the central issue in this lawsuit.

II. **Price's Diabetes**

Price was diagnosed with diabetes approximately 26 years ago. Docket no. 20-1 at 6. For at least five years before the amputation, Dr. Borchers was Price's treating physician. Docket no. 20-2 at 5. According to Dr. Borchers, Price's diabetes was uncontrolled during the time that she cared for him. *Id*. at 23. Dr. Borchers had previously treated Price for several diabetic foot infections on both feet, including one that led to the amputation of several toes on his left foot and another that led to a below-the-knee amputation on his right leg. *Id*. at 6–7.

As a diabetic, Price's health is compromised in ways aside from his diabetes. Docket no.

20-1 at 22, 27–28, 31–32. Price recognizes that infections may take longer to heal and may not heal at all. *Id*. at 31–32. Expert testimony confirms the impact of Price's diabetes on his ability to fight infections. According to Dr. Borchers, any level of diabetes, controlled or not, will have an effect on the body's ability to heal. Docket no. 20-2 at 14. As it relates to the body's ability to fight infections, diabetes makes a person 66% more susceptible to an amputation. *Id*. at 16. This risk increases if diabetes is uncontrolled, and it increases further still if a diabetic has had diabetes-related amputations in the past. *Id*. at 16–17. Dr. Borchers agreed that Price's amputation resulted, at least in some way, from his diabetes. *Id*. at 25.

Dr. Marque Anthony Allen, Price's retained expert, gave similar testimony. Docket no. 20-8. In his view, Price's diabetes played a role in the amputation. *Id*. at 4–5. Allen analogized Price's diabetes and its role in his amputation to "a forest in a drought awaiting a spark." *Id*. at 5. Allen stated that "[Price's] diabetes played a role with his ultimate outcome" in reference to Price's amputation. *Id*. at 4, 12. Allen added, though, that even a person without diabetes, who steps on a nail that enters the foot and hits the bone, has a "very high" chance of needing an amputation. *Id*. at 11, 12 ("[W]hen [a nail that a person has stepped on] hits the bone, [that person] is going to wind up with some sort of bone resection.").

### III.   Price's Insurance Coverage

Price is a dependent of his wife, Valeria, under the insurance policy at issue here. Dearborn provides the policy to Valeria's employer, the University of Texas System. Docket no. 20-7 at 1. Price filed his claim with Dearborn for accidental dismemberment benefits under the policy, which provides:

> If, while insured under the Policy, an Insured or a covered Dependent suffers an Injury in an Accident, We will pay for those Losses set forth in the Table of Losses below. The amount paid will be as stated in the Table of Losses but not more than the Principal Sum set forth in the Schedule of Benefits or Employee

enrollment form. The Loss must:

> 1. Occur within 365 days of the Accident; and
> 2. Be the direct and sole result of the Accident; and
> 3. Be independent of all other causes.

Docket no. 20-7 at 14. The policy defines "accident or accidental" as "a sudden, unexpected event that was not reasonably foreseeable." *Id.* at 8. It defines "injury" as "bodily harm resulting directly from an Accident and independent of all other causes." *Id.* at 9. It defines "loss" in a way that includes Price's amputation. *Id.* at 14.

Moreover, the Policy contains an exclusion relating to disease:

> We will not pay any benefit for any Loss that, directly or indirectly, results in any way from or is contributed to by . . . [s]ickness, disease, bodily or mental infirmity, or medical or surgical treatment thereof or bacterial or viral infection, regardless of how contracted. This does not include bacterial infection that is the natural and foreseeable result of an accidental external cut or wound, or accidental food poisoning.

*Id.* at 15.

After an investigation into Price's claim, Dearborn denied coverage. Docket no. 20-5 at 5–7. The parties dispute the extent of Dearborn's investigation and the manner in which Dearborn communicated this denial to Price. Docket no. 20 at 4 n.5.

### IV.   Procedure

Price filed this case in the District Court for the 218th Judicial District of Karnes County, Texas. Docket no. 1-2 at 3. Price, in his now-amended complaint, alleges causes of action for breach of the insurance contract, breach of the duty of good faith and fair dealing, and violations of § 541.060 of the Texas Insurance Code. Docket no. 14 at 2–4. Dearborn removed the action to this Court on the basis of diversity. Docket no. 1 at 2. Now before the Court is Dearborn's motion for summary judgment. Docket no. 20.

## DISCUSSION

### I. Standard of Review

The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). To establish that there is no genuine issue as to any material fact, the movant must either submit evidence that negates the existence of some material element of the non-moving party's claim or defense, or, if the crucial issue is one for which the non-moving party will bear the burden of proof at trial, merely point out that the evidence in the record is insufficient to support an essential element of the non-movant's claim or defense. *Lavespere v. Niagra Machine & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir. 1990), *cert. denied*, 510 U.S. 859 (1993). Once the movant carries its initial burden, the burden shifts to the non-movant to show that summary judgment is inappropriate. *See Fields v. City of South Houston*, 922 F.2d 1183, 1187 (5th Cir. 1991).

In order for a court to conclude that there are no genuine issues of material fact, the court must be satisfied that no reasonable trier of fact could have found for the non-movant, or, in other words, that the evidence favoring the non-movant is insufficient to enable a reasonable jury to return a verdict for the non-movant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n4 (1986). In making this determination, the court should review all the evidence in the record, giving credence to the evidence favoring the non-movant as well as the "evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that evidence comes from disinterested witnesses." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000).

## II.     Role of Dearborn's Denial of Coverage in Price's Causes of Action

As a preliminary matter, the Court notes that this case essentially comes down to a single issue—whether Dearborn properly denied Price's claim for dismemberment coverage. Price has alleged causes of action for breach of insurance contract, breach of the duty of good faith and fair dealing, and violations of § 541.060 of the Texas Insurance Code. Price's claim for breach of insurance contract requires that Dearborn actually breach that contract. *See U.S. Fire Ins. Co. v. Lynd Co.*, 399 S.W.3d 206, 215 (Tex. App.—San Antonio 2012, pet. denied) (listing defendant's breach of a contract as an element in a claim for breach of insurance contract). The breach of good faith and fair dealing claim requires that Dearborn "[have] no reasonable basis for denying or delaying payment of a claim." *See Lias v. State Farm Mut. Auto. Ins. Co.*, 45 S.W.3d 330, 334 (Tex. App.—Dallas 2001, no pet.). Similarly, in terms of Price's statutory cause of action, "an insurer will not be faced with a tort suit for challenging a claim of coverage if there was any reasonable basis for its denial of that coverage." *Emmert v. Progressive County Mut. Ins. Co.*, 882 S.W.2d 32, 36 (Tex. App.—Tyler 1994, writ denied); *see also Lawyers Title Ins. Corp. v. Doubletree Partners, L.P.*, 739 F.3d 848, 870 (5th Cir. 2014)

In one way or another, all of Price's claims require him to show that Dearborn wrongfully denied coverage for the amputation. They differ only in terms of whether such a denial constitutes a breach of a contract, a common law duty, or a statutory duty. Accordingly, if Dearborn shows that there is no issue of material fact on whether it properly denied Price's claim, summary judgment is proper.

## III.    Summary Judgment is Proper Against Price's Claims

Summary judgment is proper against Price because there is no genuine dispute on whether Dearborn properly denied Price's claim. This is because there is no genuine issue of

6

material fact regarding whether Price's diabetes contributed to the amputation, removing the claim from the policy's coverage.

In order for Price's amputation to be covered by the policy, he would have to show that he suffered an injury in an accident resulting in a loss as these terms are defined in the plan. *See* Docket no. 20-7 at 14. The burden is on Price to prove that his amputation is covered by the policy. *See Merryman v. Employers Nat. Life Ins. Co.*, 416 S.W.2d 609, 610 (Tex. Civ. App.—Beaumont 1967, writ ref'd n.r.e.) ("The burden of proof was upon the plaintiff to allege and prove facts showing that the loss of his leg was covered by the policy."). In addition, Price would have to show that he does not fit within the relevant exclusion to the plan, which states that Dearborn will not cover losses that are directly or indirectly contributed to by "sickness, disease, bodily or mental infirmity, or medical or surgical treatment thereof." *Id*. at 15.

### A. Accident

Summary judgment is not proper on this aspect of the policy because a genuine issue of fact exists on whether there was an accident, defined in the policy as "a sudden, unexpected event that was not reasonably foreseeable." Docket no. 20-7 at 8. Dearborn argues that Price stepping on the nail was foreseeable given the ongoing construction in Price's home, and thus was not an accident. Dearborn points to Price's own deposition testimony, where he admits that, though he has never seen it happen, such an incident "could happen." Docket no. 20-1 at 26. Further, Dearborn argues that even if there is a dispute about foreseeability, Price has not specifically alleged that this incident was "unexpected," another qualifier on the definition of accident in the policy.

There is a genuine issue of material fact as to whether Price stepping on the nail was foreseeable. The circumstances surrounding the incident show perhaps that Price stepping on a

7

nail is possible, but not necessarily that it is foreseeable to him that it would happen. Similarly, Price's statements regarding the nail, taken in the light most favorable to Price, point towards the possibility, rather than the foreseeability, that Price could step on a nail. In other words, the mere fact that the incident *could* happen does not make it foreseeable. Moreover, although Price's testimony does not discuss the nail incident in terms of expected versus unexpected, the inferences to be drawn from this evidence, along with Price's discussions on the possibility of a similar incident, raise a jury question on whether this incident is "unexpected" under the policy. For this reason, an issue of fact exists on whether an accident occurred, and summary judgment is not proper on this ground.

### B. Injury

"Injury" is defined in the policy as "bodily harm resulting directly from an Accident and independent of all other causes." Docket no. 20-7 at 9. Dearborn argues that Price did not suffer an injury because there was no accident, incorporating its prior argument based on foreseeability. Docket no. 20 at 10. This argument is without merit because, as discussed above, a fact issue exists on foreseeability. Accordingly, summary judgment is not proper with regard to the injury not resulting from an accident.

Dearborn also points out, however, that an injury under the policy must "result . . . *independent of all other causes*." *Id.*[2] There is no genuine issue of material fact as to whether Price's diabetes was a cause that resulted in his injury. The summary judgment record, viewed in the light most favorable to Price, indicates that Price was a diabetic, that his diabetes made him more susceptible to infection, that it lowered his ability to fight infections, that it greatly

---

[2] Dearborn raises its causation argument on the issue of an injury, but does not fully develop the argument until its discussion on the question of Price's loss. Still, the policy language defining both injury and loss in terms of causation is similar. As such, Dearborn's argument on causation is essentially the same with respect to both injury and loss.

increased his risk for amputation, and ultimately that it in fact did play a role in the amputation. This record is based on the testimony of two doctors—one who was Price's treating physician before and during the nail incident and the other who was Price's retained expert. Both explained the science behind a diabetic's increased susceptibility to amputation in the event of similar incidents. Further, both testified that this susceptibility would rise as a person's diabetes became less controlled, and that Price's diabetes was not well controlled. Finally, both testified that Price's diabetes contributed to his amputation in some way.

Price makes several arguments to support his position that his diabetes was not a cause of the amputation. First, he argues that both doctors agree that he, even if he did not have diabetes, would have needed the same amputation if he were suffering from the same infection, implying that his diabetes had no causal impact on the amputation. This argument overlooks the doctors' express statements that Price's diabetes had a causal impact in the infection becoming as severe as it did. Further, playing off Dr. Allen's testimony, Price asserts that "the nail piercing [the] sandal and touching [the] bone was the only cause of the infection." Not only is this statement an exaggeration of the testimony that disregards Allen's other statements that there were multiple causes, but there is no evidence in the record to tie this medical conclusion to the facts of the case. Price said that when he stepped on the nail, he felt a little pinch and noticed a small indentation, but that he had no cut or wound—let alone a wound where a nail would go deep enough into his foot to touch the bone. Docket no. 20-1 at 36–38.

Finally, Price cites *Conn. Gen. Life Ins. Co. v. Stice*, 640, S.W.3d 955, to support the proposition that the nail was the "sole proximate cause" of his injury. Docket no. 23 at 6–7. There, a widow sued an insurance company to recover benefits wrongfully denied under an accidental death policy that included similar "caused independently of all other causes"

9

language. *Stice*, 640 S.W.2d at 956–57. Her deceased husband, who suffered from cirrhosis, died after he fell and fractured his hip, and later developed an infection that would not heal and contributed to the deterioration of his liver functions. *Id*. At trial, an expert witness testified that the husband's cirrhosis did not contribute to his death, while other medical records indicated that it did. *Id*. at 957–58. The appellate court affirmed a jury's finding that cirrhosis was not a cause because the finding was neither supported by insufficient evidence nor against the great weight and preponderance of the evidence. *Id*. at 958–59.

Price's analogy to *Stice* fails because the result there was premised on a different evidentiary record than the one now before the Court. The appellate court there affirmed the jury's verdict because the evidence cut in both directions—the expert testified that cirrhosis did not contribute to the husband's death, while medical records indicated that it did. Here, though, there is no evidence indicating that Price's diabetes *did not* causally contribute to his amputation, and both experts agree that Price's diabetes contributed to his amputation. Docket nos. 20-2 at 45, 20-8 at 30–31.

The Court finds that there is no genuine issue of material fact as to whether Price suffered an "injury," defined as "bodily harm resulting directly from an Accident and *independent of all other causes*." Accordingly, there is no issue that Dearborn properly denied his claim for benefits, and summary judgment is appropriate in this action.

### C. Loss

For a similar reason, Price did not experience a loss in the way that the policy requires. The policy states that "[t]he Loss must . . . [b]e the direct and sole result of the Accident; and [b]e independent of all other causes." Docket no. 20-7 at 14. As discussed above, the summary judgment record reflects no issue of fact on whether Price's diabetes contributed to the

amputation. Because it is clear that any loss experienced by Price was caused in some way by his diabetes, this aspect of the policy also justifies summary judgment against Price's claims.

### D. Exclusion

Even if Price could show an accident, injury, and loss within the definitions of the policy, there is no fact question on whether his claim falls within the policy's exclusion, which provides that:

> We will not pay any benefit for any Loss that, *directly or indirectly, results in any way from or is contributed to by* . . . [s]ickness, disease, bodily or mental infirmity, or medical or surgical treatment thereof or bacterial or viral infection, regardless of how contracted. This does not include bacterial infection that is the natural and foreseeable result of an accidental external cut or wound, or accidental food poisoning.

Docket no. 20-7 at 15 (emphasis added). Dearborn again invokes the same causation arguments set out above—the testimony of Drs. Borcher and Allen makes it undisputed that Price's diabetes contributed to his amputation. Dearborn also points to the deposition of Gary Beck, an insurance expert retained by Price. Docket no. 20-6. Beck stated that the policy reads in such a way that no benefits are payable if a loss results directly or indirectly from diabetes or the treatment of it in any way. *Id*. at 29–31.

Again, the Court agrees with Dearborn that the summary judgment evidence shows no issue of fact as to whether Price's diabetes contributed to his purported loss, the amputation. Because diabetes fits within the ambit of a "sickness, disease, bodily or mental infirmity, or medical or surgical treatment thereof" as set forth in the policy exclusion, Price's claim would be excluded from coverage even if it met all of the other requirements.

Price argues that the bacterial infection that caused the amputation was a foreseeable result of an accidental wound, bringing his claim within the exception to the exclusion. *See* Docket no. 20-7 at 15 ("This [exclusion] does not include bacterial infection that is the natural

11

and foreseeable result of an accidental external cut or wound, or accidental food poisoning."). Assuming the bacterial infection fits within this exception, Price has only addressed one of the sicknesses, diseases, or bodily infirmities capable of putting his claim within the exclusion to coverage, and there is no basis for Price's diabetes fitting within the exception to this exclusion. For these reasons as well, summary judgment is proper.

## CONCLUSION

Defendant Dearborn National Life Insurance's Motion for Summary Judgment (Docket no. 20) is GRANTED. Plaintiff's claims are hereby DISMISSED WITH PREJUDICE. The Clerk is directed to issue a Judgment in favor of the Defendant, and that Plaintiff take nothing on his claims. Defendant may submit its Bill of Costs within 14 days in the form directed by the Clerk should it desire to pursue these costs.

It is so ORDERED.

SIGNED this 3rd day of October, 2016.

_____

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE